PHILLIP A. TALBERT
Acting United States Attorney
DAVID W. SPENCER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>CHRISTOPHER KEGAN WILLIAMS,<br><br>                              Defendant. | CASE NO.  2:21-CR-0007-MCE<br><br>PLEA AGREEMENT<br><br>DATE:<br>TIME: 10:00 a.m.<br>COURT: Hon. Morrison C. England, Jr. |

## I.  **INTRODUCTION**

### A.  **Scope of Agreement**

The Indictment in this case charges the defendant with violations of 21 U.S.C. § 841(a)(1) – distribution of fentanyl (Counts Two through Four).  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.  **Court Not a Party**

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in

the Indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea

The defendant will plead guilty to Counts Two, Three, and Four of the Indictment, each of which charges him with distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1).  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

The defendant acknowledges that the crime to which he is pleading guilty is listed in 18 U.S.C. § 3143(a)(2), and agrees that he will remain in custody upon the entry of his plea.

### B.    Sentencing Recommendation

The defendant and his counsel may recommend whatever sentence they deem appropriate.

### C.  Special Assessment

The defendant agrees to pay a special assessment of $300 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### D.  Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement.  The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement

and the commencement of any such prosecutions.  The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.    THE GOVERNMENT'S OBLIGATIONS

**A.    Recommendations**

1.    Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense, as determined by the Court. The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

2.    Acceptance of responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**B.** **Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.   ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

As to each of Counts Two, Three, and Four, distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1):

1.     On the date listed in the Indictment, the defendant knowingly distributed fentanyl; and

2.     The defendant knew that it was fentanyl or some other federally controlled substance.

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.   MAXIMUM SENTENCE

**A.** **Maximum penalty**

The maximum sentence that the Court can impose for each count is 20 years of incarceration, a fine of $1,000,000, a period of supervised release of at least three years and up to life, and a special assessment of $100.  In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

**B.** **Violations of Supervised Release**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two years of additional imprisonment.

## VI.    SENTENCING DETERMINATION

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his pleas, however, to give up the right to appeal any aspect of the guilty plea, conviction, and the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these two circumstances occur infrequently and that in all other cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case.

If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein.

## VIII.    ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 8|19|21

KRISTY HORTON
Counsel for Defendant

### B.    Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

PLEA AGREEMENT                                7

1 | case. No other promises or inducements have been made to me, other than those contained in this plea

2 | agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement.

3 | Finally, I am satisfied with the representation of my attorney in this case.

4

Dated: 8/19/21

CHRISTOPHER KEGAN
WILLIAMS, Defendant

7 | **C.**     **Attorney for the United States**

8 | I accept and agree to this plea agreement on behalf of the government.

9 | Dated:   8/19/2021

PHILLIP A. TALBERT
Acting United States Attorney

By:

DAVID W. SPENCER
Assistant United States Attorney

1

2

**EXHIBIT "A"**
**Factual Basis for Plea**

3        If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

4

5        Defendant Christopher Kegan WILLIAMS admits that, on September 13, 2019, February 6, 2020, and March 10, 2020, as detailed below, he knowingly distributed counterfeit oxycodone ("M-30")

6    pills containing fentanyl in the Eastern District of California, and that he knew these pills contained fentanyl or some other controlled substance.

7        Leading up to a transaction that occurred on September 13, 2019, WILLIAMS agreed over

8    Snapchat to sell 100 counterfeit oxycodone M-30 pills to a buyer who was in fact a confidential source (the "CS") working for the Drug Enforcement Administration (the "DEA"). On September 13, 2019,

9    WILLIAMS directed the CS to a house in Sacramento, where another individual sold approximately 100 counterfeit oxycodone M-30 pills to the CS for $1,500, in a transaction coordinated by WILLIAMS.

10   While in the residence, WILLIAMS crushed and snorted one of the pills and stated that it was "good." Subsequent testing at a DEA laboratory determined the pills contained fentanyl and weighed a total of

11   approximately 10 grams net weight.

12

13       On February 6, 2020, WILLIAMS and another individual sold approximately 90 counterfeit oxycodone M-30 pills to the CS. WILLIAMS brokered the deal and directed the CS to the other

14   individual's house in Sacramento, where the transaction took place. The CS paid $1,500 to the other individual, who gave 90 pills to the CS and 10 pills to WILLIAMS as payment for brokering the deal.

15   WILLIAMS crushed one of the pills on the countertop and snorted it. Subsequent testing at a DEA laboratory determined the pills contained fentanyl and weighed a total of approximately 9.6 grams net

16   weight.

17       On March 10, 2020, another individual sold approximately 290 counterfeit oxycodone M-30 pills

18   to the CS in a deal brokered by WILLIAMS. WILLIAMS directed the CS to pick up an associate, who directed them to a house in Sacramento, where they met with a third individual in a car parked outside

19   the residence. This third individual sold the pills to the CS for $4,000. This individual gave WILLIAMS $1,000 and 10 pills as payment for brokering the deal. Subsequent testing at a DEA

20   laboratory determined the pills contained fentanyl and weighed a total of approximately 30 grams net weight.

21

22       I, Christopher Kegan Williams, have reviewed the Factual Basis in Exhibit A and adopt it as a true and correct statement of my conduct.

23

24   Dated: ___8/19/21___                    ___Chris Williams___

25                                          CHRISTOPHER KEGAN
                                           WILLIAMS, Defendant

26

27

28