PHILLIP A. TALBERT
Acting United States Attorney
DAVID W. SPENCER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>            v.<br><br>CHRISTOPHER KEGAN WILLIAMS,<br><br>                    Defendant. | CASE NO.  2:21-CR-0007-JAM<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR; SENTENCING MEMORANDUM<br><br>DATE: December 14, 2021<br>TIME: 9:30 a.m.<br>COURT: Hon. John A. Mendez |

The United States respectfully submits this sentencing memorandum and response to Defendant's Objections to the PSR (ECF No. 252), in advance of defendant Christopher Williams' judgment and sentencing hearing, currently scheduled for December 14, 2021.

## I.      SENTENCING RECOMMENDATION

The United States does not have any objections to the final Presentence Investigation Report ("PSR") filed on November 18, 2021.  ECF No. 242.  As required by the plea agreement, at sentencing the United States will recommend a sentence at the low end of the applicable guideline range – 30 months' imprisonment if the Court adopts the guidelines range in the PSR.

## II.      RESPONSE TO DEFENDANT'S OBJECTIONS TO PSR

Williams argues that he should receive a reduction for his role in the offense.  *See* ECF No. 252. The United States disagrees.  As the Probation Officer noted in declining to apply a role reduction, "there is no indication defendant played a minor or minimal role" in the charged transactions; to the

contrary, for each charged transaction, Williams "connect[ed] the [confidential source ("CS")] to a supplier[,] . . . went with the CS, negotiated the transactions, and was paid in either pills or money for brokering the deals."  ECF No. 243-2, at 1.

As defendant acknowledges, a mitigating role reduction under U.S.S.G. § 3B1.2 is appropriate only for a defendant who is "substantially less culpable than the average participant in the criminal activity."  U.S.S.G. § 3B1.2, application note 3(A); *see* ECF No. 252, at 1.

In this case, far from playing a minor role in the three distribution counts of conviction, Williams was the one who orchestrated the deals from start to finish.  Williams found the CS as a customer, negotiated the deal with the CS, and coordinated the logistics and details of each transaction.  Without Williams, the deals never would have happened.  For at least one transaction, Williams received $1,000 in addition to pills as payment for brokering the deal.  Moreover, Williams brokered the three transactions through three different sources of supply, showing that he was an independent drug dealer with access to multiple fentanyl pill suppliers.  Certainly, Williams's role was not limited to "transporting or storing drugs" for someone else, like the example of a potential minor participant in the application notes.  U.S.S.G. § 3B1.2, application note 3(A).  Rather, Williams was an independent dealer of hundreds of fentanyl M-30 pills.

Williams's role in these transactions as an independent dealer is supported by other evidence.  In a video from September 7, 2020 (defendant's 25th birthday) that was found on the seized phone of another arrestee, Williams can be seen offering a large quantity of M-30 pills on Snapchat for $450 per 100 pills.  *See* Exhibit 1 (stills from video).  The video shows a bag with what appears to be many hundreds of M-30 pills with the caption: "100 for 450$ all day bday special bitch."  *Id.*  From this video, as well as Williams's multiple distributions to the CS, it appears Williams sold hundreds of M-30 pills at a time to his own customer base.

Further confirming Williams's role as an independent dealer of illegal products, Williams also sold firearms in black-market transactions, including to the same CS who bought the pills in the counts of conviction.  Williams's recorded communications with the CS show him discussing multiple firearms with the CS.  *See* Exhibit 2.  Defendant also sold four firearms to the CS (who worked for ATF as well as DEA) on three occasions in September and October of 2019—two .40-caliber Glock pistols, a

1   Remington .380-caliber pistol, and an Anderson Manufacturing multi-caliber (.223/5.56) rifle.  The

2   September 7, 2020 video described above also shows defendant offering a firearm for sale for $1,500 or

3   best offer on Snapchat ("1500 OBO").  *See* Exhibit 1.

4   Williams's illegal drug trafficking, and firearms possession, continued until his arrest in April

5   2021.  At the time of his arrest on the warrant for this case, Williams was found in Los Angeles with

6   $5,000 in cash in a car with 24,750 Xanax pills in the trunk.  *See* PSR ¶¶ 32-33.  Williams also had a

7   stolen firearm in his hotel room that he admitted he obtained off the streets.  *See* PSR ¶¶ 27, 31.

8   In sum, the three counts of conviction for distributing fentanyl were part of larger pattern of

9   Williams selling drugs (primarily counterfeit M-30 fentanyl pills), as well as firearms, for profit, as an

10   independent dealer with his own customer base.  Accordingly, Williams was not "substantially less

11   culpable than the average participant" in the drug distributions.

## III.    CONCLUSION

13   The United States respectfully urges the Court to adopt the PSR's guidelines calculations,

14   resulting in a guidelines range of 30-37 months' imprisonment, and to sentence Williams to the low end

15   of that range—30 months.

Respectfully submitted,

18   Dated:  December 6, 2021

PHILLIP A. TALBERT
Acting United States Attorney

20   By:  /s/ DAVID W. SPENCER
DAVID W. SPENCER
Assistant United States Attorney